United States Bankruptcy Court
Southern District of Texas

**ENTERED**
July 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § § **CASE NO: 21-31948** § **WASHINGTON PRIME GROUP INC.,** *et al.*, § **CHAPTER 11** § § Debtors. § § | |
| **WPG NORTHTOWN VENTURE, LLC,** § § Plaintiff, § § VS. § **ADVERSARY NO. 22-3031** § **COUNTY OF ANOKA,** § § Defendant. § | |

## MEMORANDUM OPINION

Anoka County moves to dismiss this adversary proceeding for lack of subject matter jurisdiction.  Specifically, Anoka County argues that the "Tax Injunction Act" precludes this Court from exercising subject matter jurisdiction over WPG Northtown Venture's request for a property-tax-liability determination under 11 U.S.C. § 505.  Although § 505 and the Tax Injunction Act conflict, § 505 is an exception to the Tax Injunction Act.  The motion to dismiss is denied.

## BACKGROUND

Washington Prime Group, Inc. is a real estate investment trust that owns, develops, and manages shopping malls and open-air retail properties throughout the United States.  (Case No. 21-31948, ECF No. 26 at 1).  As of the petition date, Washington Prime Group's portfolio included interests in 102 shopping centers and 52 million square feet of leasable space.  (Case No. 21-31948, ECF No. 26 at 1).  This dispute concerns Washington Prime Group's subsidiary, WPG Northtown

Venture, LLC ("WPG Northtown"), and the shopping mall it owns and operates in Anoka County, Minnesota. (ECF No. 1).

Anoka County assesses *ad valorem* taxes on January 2 each year. (ECF No. 18 at 2). The tax is payable the following calendar year (*e.g.*, taxes assessed on January 2, 2019, are payable any time before December 31, 2020). (ECF No. 18 at 2). In 2019, Anoka County assessed the value of the Northtown Mall at $52,567,900; in 2020, the County assessed the value at $53,331,200; and in 2021, the County assessed the value at $46,238,200. (ECF No. 1 at 3). WPG Northtown disputes the accuracy of these assessments but paid the taxes. (ECF No. 29 at 20).

WPG Northtown appealed the 2019, 2020, and 2021 assessments to the District Court of Anoka County, Tenth Judicial District. (ECF No. 1 at 4). The appeals were transferred to the Minnesota Tax Court. (ECF No. 1 at 4).

On June 13, 2021, Washington Prime Group and its affiliates filed petitions for chapter 11 relief. (Case No. 21-31948, ECF No. 1). The Court confirmed Washington Prime Group's Plan on September 3, 2021. (Case No. 21-31948, ECF No. 1022). Throughout its bankruptcy, WPG Northtown continued to litigate pre-trial matters in the tax appeals. (ECF No. 18 at 5).

WPG Northtown initiated this adversary proceeding on February 24, 2022. (ECF No. 1). WPG Northtown seeks relief under § 505 of the Bankruptcy Code, which authorizes a bankruptcy court to "determine the amount or legality of any tax . . . whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." (ECF No. 1 at 5). Anoka County moved to dismiss, arguing the Tax Injunction Act prohibits the Court from exercising subject matter jurisdiction over this state *ad valorem* tax dispute. (ECF No. 18 at 3). WPG Northtown argues that the Tax Injunction Act does not inhibit the Court's authority under § 505. (ECF No. 22 at 3).

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). As discussed below, the Tax Injunction Act does not deprive the Court of subject matter jurisdiction. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(O). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

This dispute concerns an alleged conflict between the Tax Injunction Act and 11 U.S.C. § 505. To resolve the controversy, the Court must first determine if § 505(a)(1) conflicts with the Tax Injunction Act. If the two statutes conflict, the Court must then determine which statute controls.

The Tax Injunction Act provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.

11 U.S.C. § 505(a)(1) empowers bankruptcy courts to determine state tax disputes:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1).

Like every case involving statutory construction, the Court starts with the language of the statute. *Watt v. Alaska*, 451 U.S. 259, 265 (1981). Apparently conflicting statutes should be construed harmoniously, with every provision of both statutes given effect. *See U.S. v. Borden Co.,* 308 U.S. 188, 198 (1939) ("When there are two acts upon the same subject, the rule is to give

effect to both if possible."); *Columbia Gas Dev. Corp. v. Fed. Energy Regul. Comm'n*, 651 F.2d 1146, 1158 (5th Cir. 1981) (citing *Panhandle E. Pipeline Co. v. FPC*, 359 F.2d 675, 679 (8th Cir. 1966)) ("When interpreting and construing two acts that affect one particular subject matter or area, the court must attempt to reconcile the acts, if possible, so as to produce a symmetrical whole."). If two statutes irreconcilably conflict, courts may use the canons of statutory construction to determine which statute controls. *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994) (citing *Watt*, 451 U.S. at 266); *see, e.g.*, *In re Fonke*, 321 B.R. 199, 204 (Bankr. S.D. Tex. 2005) ("Based on the above mentioned statutory conflicts and ambiguities, this Court is obligated to return to the fundamentals of statutory interpretation . . . .").

I. **SECTION 505 AND THE TAX INJUNCTION ACT CONFLICT**

By their plain terms, the Tax Injunction Act and § 505 do not conflict. The words "enjoin, suspend or restrain" as used in the Tax Injunction Act bar only anticipatory relief that stops the state tax collection process. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 433 (1999). The relief requested here is not anticipatory, it is remedial. WPG Northtown has not asked this Court to prevent Anoka County's assessment, collection, or levy of taxes. Rather, WPG Northtown seeks a redetermination of Northtown Mall's value and the recovery of excess taxes already paid.

However, the Fifth Circuit has interpreted the Tax Injunction Act to encompass actions for state tax refunds. *Home Builders Ass'n of Miss., Inc. v. Madison, Miss.,* 143 F.3d 1006, 1013 n.6 (5th Cir. 1998) (citing *Pendleton v. Heard*, 824 F.2d 448, 451 (5th Cir.1987)) ("It is equally well-settled that the [Tax Injunction Act] applies to actions like the one before us, in which the plaintiff seeks a refund of taxes it has already paid."); *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 323 (5th Cir. 1979) (We hold that the Tax Injunction Act of 1937 . . . bars district court jurisdiction over state refund suits."); *Bland v. McHann*, 463 F.2d 21, 27 (5th Cir. 1972) ("An action for a

refund is an integral part of state tax administration. . . . [The Tax Injunction Act] compels the taxpayers to seek anticipatory relief through a plain, speedy and efficient state remedy. An ancillary claim for a refund should properly be joined with it."). These decisions bind this Court absent an intervening *en banc* or Supreme Court overruling of the decisions. *Perez v. Abbot*, 250 F.Supp.3d 123, 139 (W.D. Tex. 2017) (citing *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)). The Court is unaware of existing binding precedent that overrules the Fifth Circuit's interpretation of the Tax Injunction Act. Based on that interpretation, the Tax Injunction Act divests federal courts of subject matter jurisdiction to adjudicate claims for a state tax refund.

Under Fifth Circuit precedent, this matter falls within the Tax Injunction Act's parameters. Thus, § 505(a)(1) and the Tax Injunction Act conflict.

## II.   SECTION 505 CONTROLS OVER THE TAX INJUNCTION ACT

Despite their facial conflict, § 505 operates as an exception to the Tax Injunction Act. First, § 505 is a specific-application statute enacted nearly three decades after the Tax Injunction Act. Second, § 505's state-law taxation provisions should not be rendered statutory surplusage by the Tax Injunction Act. Finally, interpreting § 505 as an exception to the Tax Injunction Act comports with the holdings of three circuit courts that have analyzed the interplay between § 505 and the Tax Injunction Act.

When statutes conflict, the more recently enacted governs. *See Watt*, 451 U.S. at 266. Congress enacted the antecedent to § 505 twenty-nine years after the Tax Injunction Act's enactment.[1] Congress is presumed to be aware of existing law when it enacts new laws. *Miles v.*

---

[1] Congress enacted the Tax Injunction Act in 1937. Section 2a(2A) of the Bankruptcy Act was enacted in 1966. Section 505(a)(1) was enacted in 1978. However, the language of §505(a)(1) of the Bankruptcy Code is nearly identical to that of section 2a(2A) of the Bankruptcy Act. *See* 4 COLLIER ON BANKRUPTCY ¶ 505.LH [1][b] (16th ed. 2022).

*Apex Marine Corp.*, 498 U.S. 19, 32 (1990). Congress could have qualified § 505(a)(1) to limit the bankruptcy courts' power to adjudicate state law tax disputes consistent with the Tax Injunction Act's strictures. It did not. Instead, § 505(a)(1) explicitly grants bankruptcy courts broad authority to "determine the amount or legality of *any* tax," and only limits that power in three narrow instances, none of which are relevant here. 11 U.S.C. § 505(a)(1)–(2) (emphasis added).

When two statutes conflict, the more specific statute controls. *See Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."). Section 505(a)(1) specifically authorizes federal courts to determine a debtor's tax liability. *See* 11 U.S.C. § 505(a)(1). In contrast, the Tax Injunction Act generally prohibits all federal courts from prospectively interfering with a state's ability to collect taxes. 28 U.S.C. § 1341. Section 505(a)(1)'s specific application (*i.e.,* a bankruptcy court's determination of a debtor's tax liability) strongly suggests it controls. *Cf. Hackler v. Arianna Holdings Co., LLC (In re Hackler & Stelzle-Hackler)*, 938 F.3d 473, 481 (3d Cir. 2019) ("The Bankruptcy Code permits courts to unwind preferential transfers; that specific edict overrides the Tax Injunction Act."); *see also Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1293 (9th Cir. 2013) ("[T]he bankruptcy court may exercise jurisdiction over proceedings that would otherwise violate the [Tax Injunction] Act where the relief sought was necessary to the enforcement of specific Bankruptcy Code provisions.").

Interpreting the Tax Injunction Act to preclude the Court from reassessing WPG Northtown's *ad valorem* tax liability under § 505(a)(1) would render §§ 505(a)(2)(C) and 505(b)(1)(A) meaningless. Courts must avoid rendering statutory language meaningless. *White v. Black*, 190 F.3d 366, 368 (5th Cir. 1999) ("The canons of statutory construction dictate that when

construing a statute, the court should give words their ordinary meaning and should not render as meaningless the language of the statute."). Section 505(a)(2)(C) deprives the bankruptcy court of authority to determine "the amount or legality of any amount arising in connection with an *ad valorem* tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." 11 U.S.C. § 505(a)(2)(C). Critically, the federal government does not assess *ad valorem* taxes. Only state and local governments do. If the Tax Injunction Act prohibited a bankruptcy court from determining the amount of a contested *ad valorem* tax, § 505(a)(2)(C) would have no function at all. Because an alternative reading would render a portion of § 505 meaningless, § 505 should be read to allow bankruptcy courts to determine the amount of a contested *ad valorem* tax.

This logic also holds true for § 505(b)(1)(A)'s requirement that the clerk maintain a list under which a federal, state, or local government taxing authority may designate an address for service. § 505(b)(1)(A). If the Tax Injunction Act bars federal courts from determining state and local tax liability, there would be no need for the clerk to maintain such a list because those taxing authorities would never need to be served. 11 U.S.C. § 505(b)(1)(A). *See Cambranis v. Blinken*, 994 F.3d 457, 465 (5th Cir. 2021) ("[C]ourts should construe statutes to avoid rendering language and requirements to be surplusage.").

Three different circuit courts have concluded that § 505(a)(1) controls over the Tax Injunction Act. *See Balt. Cnty., Md. v. Hechinger Liquidation Tr. (In re Hechinger Inv. Co. of Del., Inc.),* 335 F.3d 243, 247 n.1 (3d Cir. 2003) ("It is well established . . . that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes."); *In re Stoecker,* 179 F.3d 546, 549 (7th Cir. 1999) (finding that the Tax Injunction Act did not bar the bankruptcy court from determining the debtor's liability

for state sales tax because the Bankruptcy Code explicitly granted such authority under § 505(a)(1)); *City Vending of Muskogee, Inc. v. Okla. Tax Comm'n*, 898 F.2d 122, 123 (10th Cir. 1990) ("[The Tax Injunction Act], however, will not preclude the determination of state tax liability where federal courts have jurisdiction under the Bankruptcy Code, 11 U.S.C. § 505."); *Adams v. Ind.*, 795 F.2d 27, 29 (7th Cir. 1986) (finding that a bankruptcy court may determine a debtor's state tax liability under § 505(a) notwithstanding the Tax Injunction Act). These decisions are consistent with the three established canons of statutory construction previously discussed. The Court declines to depart from these rulings.

Anoka County argues that the Court should follow the reasoning of *Northbrook Partners LLP v. County of Hennepin (In re Northbrook Partners)*, 245 B.R. 104 (Bankr. D. Minn. 2016). (ECF No. 18 at 13). There, the court held that the Tax Injunction Act prohibited a bankruptcy court from exercising jurisdiction over a § 505 action because the debtor already had an *ad valorem* tax appeal pending in a state forum. *Northbrook*, 245 B.R. at 116 ("At least as applied to a dispute over *ad valorem* real estate taxes where the owner has an appeal pending in a non-federal forum, the federal courts have no business furnishing an alternative forum for the same issue under § 505(a)."). The Court disagrees with this holding. The fact that a state court tax appeal may have been pending at the time § 505 relief was requested by the debtor is irrelevant to a bankruptcy court's authority under § 505. A bankruptcy court has authority to determine the amount of any tax, even after an initial adjudication of the tax liability by a court of competent jurisdiction. *See* 11 U.S.C. § 505(a)(1). The commencement of a state tax appeal does not preclude a bankruptcy court's adjudication of a § 505(a)(1) claim when § 505(a)(1) itself contemplates a pre-existing "adjudicat[ion] by a judicial or administrative tribunal of competent jurisdiction." § 505(a)(1).

## CONCLUSION

The Court has subject matter jurisdiction over this dispute. Anoka County's motion to dismiss is denied. A separate order will be entered.

SIGNED 07/12/2022

_____
Marvin Isgur
United States Bankruptcy Judge